848 P.2d 856

**HYDROCULTURE, INC., Plaintiff–Appellant, Cross–Appellee,**

**v.**

**COOPERS & LYBRAND, Defendant–Appellee, Cross–Appellant.**

**No. 1 CA–CV 90–381.**

Court of Appeals of Arizona, Division 1, Department C.

Sept. 17, 1992.

Reconsideration Denied Nov. 10, 1992.

Review Denied April 13, 1993.*

---

* Feldman, C.J., of the Supreme Court, recused himself and did not participate in the determi-nation of this matter.

Robbins & Green, P.A. by Philip A. Robbins, Sally C. Shanley, Phoenix, for plaintiff-appellant, cross-appellee.

Snell & Wilmer by Warren E. Platt, George J. Coleman, Gary Beren, Phoenix, for defendant-appellee, cross-appellant.

. OPINION

McGREGOR, Judge.

Plaintiff Hydroculture, Inc. (Hydroculture) appeals from the summary judgment and directed verdict entered in favor of defendant Coopers & Lybrand (Coopers). Hydroculture's appeal presents the ques-

tion whether an independent public accounting firm's client can bring an action against the accounting firm for negligence in performing an independent audit. We hold the client can bring such an action and reverse the trial court's holding to the contrary.

Coopers cross-appeals from the trial court's orders denying Coopers' motions for summary judgment and motion for security for costs. We affirm the orders challenged in the cross-appeal because disputed issues of fact precluded summary judgment and Coopers' motion for security for costs was not timely filed.

## I.

Hydroculture engaged in commercial hydroponics, the growing of plants in a nutrient solution in a greenhouse environment. In 1968, Hydroculture became a public corporation and registered with the Securities and Exchange Commission (SEC). SEC regulations required Hydroculture to hire an independent public accounting firm to audit its annual financial statements in conformity with generally accepted accounting principles (GAAP)[1] and to submit to the SEC certain forms, including audited financial statements. 17 C.F.R. §§ 210.2–02, 240.13a–1 (1973).

In October 1972, Hydroculture hired Coopers as its independent public accounting firm. Coopers designated Thomas McKibben the partner in charge of the Hydroculture audit. Coopers became involved with Hydroculture's general financial affairs and assisted Hydroculture with matters such as bookkeeping, drafting contracts, and selecting a controller. Coopers audited Hydroculture's fiscal year 1972 financial statements as required by SEC regulations.

McKibben died in October 1973, after the end of fiscal year 1973 but prior to beginning the 1973 audit. James Kunkel replaced McKibben as the partner assigned to Hydroculture.

In October 1973, Coopers began auditing Hydroculture's fiscal year 1973 financial statements. Hydroculture's goal in 1973, as it had been in 1972, was to recognize as much income on its financial statements as allowable under GAAP. During the audit, Coopers concluded that Hydroculture had to reverse the recognition of certain income Hydroculture had already recorded during 1973.[2] The income allegedly improperly recognized during 1973 involved three matters the parties refer to as the Glendale, Dameron, and Georgia transactions. Hydroculture had recognized income from each transaction on its books and quarterly financial statements for fiscal year 1973. Hydroculture contends it recognized the income from the three transactions pursuant to advice from Coopers.

Kunkel met with Hydroculture in November 1973 to discuss the audit and informed Hydroculture it could not properly recognize all the income from the three transactions. Hydroculture asked Coopers to reconsider and argued that, based on Coopers' previous advice, recognition of income on the three transactions conformed with GAAP. Coopers informed Hydroculture it would not issue an unqualified opinion on the financial statements unless Hydroculture reversed the income recognized on the three transactions.[3]

Hydroculture knew it could fire Coopers and retain a different independent accounting firm and considered doing so. Hydroculture's representatives testified they concluded they lacked sufficient time to hire another firm. Hydroculture finally re-

---

**1.** Generally accepted accounting principles are the concepts, principles, and ground rules used in preparing financial statements. WALTER B. MEIGS & ROBERT F. MEIGS, ACCOUNTING: THE BASIS FOR BUSINESS DECISIONS 6 (7th ed. 1987).

**2.** Recognizing income means recording items of income in the accounting entity's books of account and financial statements. *See* MEIGS & MEIGS, *supra,* at 87.

**3.** In 1973, an unqualified opinion stated that in the auditor's opinion, the company's financial statements fairly present the financial position of the company, the results of its operations, and the changes in its financial position for the period under audit, in conformity with consistently applied GAAP. 1 AICPA, Statement on Auditing Standards §§ 510, 511.01 (CCH) (1973).

versed the income on the three transactions and issued its 1973 financial statements in accord with Coopers' advice. Coopers issued an unqualified opinion on the financial statements.

After filing its 1973 financial statements with the SEC and disseminating them to the financial community, Hydroculture found itself unable to obtain financing for continued operations and filed for bankruptcy in 1975. Although Hydroculture came out of reorganization in 1976, it never became a profitable company.

Coopers filed a claim in the bankruptcy court to recover fees for its accounting services. Hydroculture counterclaimed for accounting malpractice. Coopers moved to dismiss the counterclaim, asserting the bankruptcy court lacked jurisdiction over malpractice actions. Four years later, the bankruptcy court ruled on Coopers' motion by dismissing Hydroculture's counterclaim.

Shortly after the bankruptcy court dismissed its counterclaim, Hydroculture filed this action for accounting malpractice in superior court, alleging Coopers performed negligently in its auditing capacity and its advising capacity. Coopers filed three motions relevant to the present appeal and cross-appeal. First, Coopers moved for summary judgment, asserting the statute of limitations barred Hydroculture's action. The trial court denied the motion both as a matter of law and because it found genuine issues of material fact remained.

Second, Coopers moved for an order requiring Hydroculture to post security for Coopers' costs, pursuant to Rule 67(d), Arizona Rules of Civil Procedure. The trial court denied the motion as untimely.

Third, Coopers again moved for summary judgment, asserting that, as a matter of law, it could not be held liable to Hydroculture for its actions as an independent auditor. Coopers also asserted that, as a matter of law, its actions were not the proximate cause of any damages Hydroculture might have incurred. Finally, Coopers argued it was entitled to summary judgment because the doctrines of equitable

estoppel, quasi-estoppel, estoppel by oath, and waiver barred Hydroculture's claims.

The trial court found as a matter of law that Coopers could not be liable for actions taken in its role as an independent auditor and granted summary judgment in Coopers' favor on the issue of auditor liability. Finding genuine issues of material fact, the court denied summary judgment as to Hydroculture's alternative theory that Coopers acted negligently in its capacity as an advisor. The court also denied Coopers' motion for summary judgment based on estoppel and waiver.

The case proceeded to trial on Hydroculture's theory that Coopers acted negligently in its advisory capacity. After hearing Hydroculture's expert witness testify outside the presence of the jury, the trial court concluded that his testimony concerned only Coopers' role as auditor and did not apply to Coopers' role as advisor. The judge therefore refused to admit the expert testimony.[4] After Hydroculture rested, the trial court granted Coopers' motion for a directed verdict because Hydroculture lacked expert testimony to establish its negligence claim.

Hydroculture timely appeals from the summary judgment on its claim asserting auditor liability and from the directed verdict. We have jurisdiction over the appeal pursuant to Ariz.Rev.Stat.Ann. ("A.R.S.") § 12–2101.B.

Coopers timely cross-appeals from the denial of its motions for summary judgment and its motion for security for costs. For the reasons discussed below, we have jurisdiction over the cross-appeal pursuant to A.R.S. § 12–2102.A.

## II.

Hydroculture first contends the trial court erred by concluding, as a matter of law, that Coopers could not be liable to its client for negligence in performing an audit. In response, Coopers contends the trial court properly granted summary judg-

---

**4.** Hydroculture informed the trial court that the testimony of its other experts would be substantially the same and the trial court therefore also precluded their testimony.

ment because (1) as a matter of law, Coopers' duty to the public transcends its duty to Hydroculture, (2) Hydroculture did not present any expert testimony to support its negligence claim in response to Coopers' motion for summary judgment, and (3) as a matter of law, Coopers did not cause any damages Hydroculture may have incurred as a result of issuing the financial statements reversing the recognition of income. Because we will uphold a grant of summary judgment on any valid legal basis, we review all Coopers' arguments regarding auditor liability. *See Glaze v. Marcus*, 151 Ariz. 538, 540, 729 P.2d 342, 344 (App. 1986).

### A.

■ To determine whether Coopers, acting as an independent auditor, owed a duty to Hydroculture we examine the nature of the relationship between the two parties. The question of duty is one of law for the trial court and a question we review *de novo. Markowitz v. Arizona Parks Bd.*, 146 Ariz. 352, 354, 706 P.2d 364, 366 (1985). An accountant owes a duty to the client to render services with the degree of skill and competence exercised by members of the accounting profession and in accordance with accepted professional standards.[5] *See Sato v. Van Denburgh*, 123 Ariz. 225, 227, 599 P.2d 181, 183 (1979) ("negligent performance of professional services by an accountant sounds in tort"); *see generally* Russel L. Wald, Annotation, *Accountant's Malpractice Liability to Client*, 92 A.L.R.3d 396, 411–31 (1979).

Coopers does not dispute that an accountant performing an audit owes a duty of care to its client. Coopers argues, however, that as an independent auditor, it owed a duty to the public to report Hydroculture's transactions in accordance with GAAP and that its duty to the public supersedes any duty to Hydroculture. Therefore, Coopers concludes, it cannot be liable

to Hydroculture for alleged negligence in performing the audit.

Coopers relies primarily on *United States v. Arthur Young & Co.*, 465 U.S. 805, 104 S.Ct. 1495, 79 L.Ed.2d 826 (1984) and *In re Touche, Niven, Bailey & Smart*, 37 S.E.C. 629 (1957). We conclude neither decision controls this situation. In *Arthur Young*, the Supreme Court held that work papers generated by a public accountant while performing an audit are not protected from administrative summons by a work product privilege similar to the attorney work product privilege established in *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947). The Court relied in part on the distinction between the functions of attorneys and public auditors. In discussing the role played by an accountant auditing a company's financial reports, the Court stated:

> The *Hickman* work product doctrine was founded upon the private attorney's role as the client's confidential adviser and advocate, a loyal representative whose duty it is to present the client's case in the most favorable possible light. An independent certified public accountant performs a different role. By certifying the public reports that collectively depict a corporation's financial status, *the independent auditor assumes a public responsibility transcending any employment relationship with the client.* The independent public accountant performing this special function *owes ultimate allegiance to the corporation's creditors and stockholders, as well as to the investing public.* This "public watchdog" function demands that the accountant maintain total independence from the client at all times and requires complete fidelity to the public trust.

465 U.S. at 817–18, 104 S.Ct. at 1503 (emphasis added).

Coopers contends this case presents a situation similar to that envisioned by the Supreme Court in *Arthur Young*. That

---

**5.** In Arizona, accepted professional standards for a certified public accountant include GAAP and generally accepted auditing standards (GAAS). Ariz.Comp.Admin.R. & Regs. R4–1–455.B.1 (1992). *See* A.R.S. § 32–703.A.1 (Arizona Board of Accountancy "may establish[ ] ... high standards of competence ... [for] certified public accountant[s] ... as required by generally accepted auditing standards and generally accepted accounting principles").

decision, however, addressed a situation in which a client pressures its public accountant hired to perform an audit to issue an unqualified opinion on financial statements that do not conform to GAAP. The Court determined that because the accountant also owes duties to creditors and investors, is not an advocate for its client's position, and must maintain its independence from the client, the accountant must either insist on compliance with GAAP or refuse to issue an unqualified opinion of the financial statements. The Court did not hold that an auditor's duty to third parties supplants or negates its duty to its client.

*In re Touche, Niven* is similarly distinguishable. In that case, the SEC sanctioned an accounting firm that issued an unqualified opinion on a corporation's materially misleading financial statements, holding that the accountant's opinion "failed to comply with generally accepted auditing standards and rules and regulations of the Commission...." 37 S.E.C. at 671. The decision recognizes that an accountant must maintain independence from the company whose books it audits, a principle Hydroculture does not dispute.

Neither *Arthur Young* nor *In re Touche, Niven* establishes or suggests that an accounting firm's responsibility to third parties negates its duty to its client. *See, e.g., Seaward Int'l, Inc. v. Price Waterhouse*, 239 Va. 585, 391 S.E.2d 283 (1990) (corporation sued accounting firm for malpractice in conducting audit, alleging auditors negligently failing to investigate records to discover controller's miscalculations); *Lincoln Grain, Inc. v. Coopers & Lybrand*, 216 Neb. 433, 345 N.W.2d 300 (1984) (corporation sued accounting firm for malpractice in conducting audit, alleging auditors negligently failed to discover fraudulent activity of corporate employee that resulted in overvaluation of inventory); *Greenstein, Logan & Co. v. Burgess Marketing, Inc.*, 744 S.W.2d 170, 185 (Tex.Ct. App.1987) ("[c]ertified public accountants [conducting an audit] are liable for the damages proximately caused by their negligence just like other skilled profession[als]"); *Western Surety Co. v. Loy*, 3 Kan.App.2d 310, 594 P.2d 257, 262 (1979)

(county may recover damages from a certified public accountant who negligently performs an audit).

Coopers argues it cannot be liable to Hydroculture because its decision to report as income the transactions in question complied with GAAP. In making that argument, Coopers confuses the issues of duty and standard of conduct. The trial court did not determine whether Coopers' method of reporting the three transactions at issue complied with GAAP. Indeed, that issue is central to the dispute between Coopers and Hydroculture, as each party argues its approach to reporting the transactions complied with GAAP and the approach of the other did not. Coopers' compliance with GAAP is relevant to determining whether Coopers fulfilled its duty to Hydroculture and to third parties, but does not affect whether Coopers owed a duty to Hydroculture.

Whether Coopers fulfilled its duty to Hydroculture to render services in accordance with acceptable professional standards is a question of standard of conduct, not of duty, and is therefore a question for the jury. *Markowitz*, 146 Ariz. at 357–58, 706 P.2d at 369–70.

> [D]uty is a question of whether the defendant is under any obligation for the benefit of the particular plaintiff; and in negligence cases, the duty is always the same—to conform to the legal standard of reasonable conduct in the light of the apparent risk. What the defendant must do, or must not do, is a question of the standard of conduct required to satisfy the duty.

*Coburn v. City of Tucson*, 143 Ariz. 50, 52, 691 P.2d 1078, 1080 (1984) (quoting W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 53, at 356 (5th ed. 1984)).

■ We hold that an auditor's duty to third parties does not negate that duty owed to the client so as to preclude the client from asserting a cause of action against the auditor for negligence in performing the audit. We therefore conclude

the trial court erred in granting summary judgment on this basis.

### B.

Coopers also contends we can affirm summary judgment in its favor because Hydroculture's response to Coopers' motion for summary judgment failed to indicate that Hydroculture possessed expert testimony to establish a material issue of fact as to Coopers' alleged auditing malpractice. We disagree.

■ As Coopers contends, a defendant can obtain summary judgment when the plaintiff is unprepared to establish a prima facie case. *See Orme School v. Reeves,* 166 Ariz. 301, 310, 802 P.2d 1000, 1009 (1990). To do so, however, the defendant must "point out by specific reference to the relevant discovery that no evidence exist[s] to support an essential element of the claim." *Id.* Coopers did not do so. In moving for summary judgment Coopers did not argue Hydroculture lacked essential testimony to establish any element of its claim. A plaintiff responding to a motion for summary judgment need not present its prima facie case unless the motion adequately challenges its ability to do so.[6] We therefore conclude summary judgment is not proper on this basis.

### C.

■ Coopers further asserts that even if it was negligent in performing the audit, as a matter of law it cannot be held liable for damages for two reasons. First, Coopers contends that because financial statements are representations of the company and not of the auditor, Hydroculture's own actions in accepting and disseminating the financial statements, rather than any action of Coopers, proximately caused Hydroculture's damages.

The authority upon which Coopers relies does not apply to the situation presented here. *See, e.g., United States v. Erickson,*

601 F.2d 296, 305 (7th Cir.), *cert. denied,* 444 U.S. 979, 100 S.Ct. 480, 62 L.Ed.2d 406 (1979) (the fact that financial statements are audited by an independent public accounting firm does not relieve bank officers from liability to third parties for wilfully filing materially false and misleading financial statements); *In re Interstate Hosiery Mills, Inc.,* 4 S.E.C. 706, 721 (1939) (management does not discharge its obligation to report accurate financial information to the SEC and investors by employing an independent public accounting firm to audit the financial statements). These decisions hold that a company cannot escape liability to third parties for disseminating audited false financial statements by placing the blame on the auditor; they do not shield an auditor that negligently conducts an audit from liability to its client.

Second, Coopers contends its actions did not proximately cause Hydroculture's damages because Hydroculture could have fired Coopers and retained another accountant who would have allowed Hydroculture to report the transactions as it wished. Proximate causation generally presents a question of fact for the jury. *Markowitz,* 146 Ariz. at 358, 706 P.2d at 370. Only when the facts are undisputed and reasonable jurors could not differ as to the conclusion the facts support can the court determine the issue as a matter of law. *Id.*

This case does not present uncontroverted facts from which only one conclusion may be drawn. Hydroculture presented evidence that Coopers, through unreasonable delay or inaction, did not provide Hydroculture sufficient time to take remedial action. Although that evidence is disputed, reasonable jurors could conclude Hydroculture, because of Coopers' actions, did not have a practical opportunity to make any choice except to accept the financial statements as approved by Coopers. Therefore, summary judgment on this ground was not appropriate.

---

6. Had Coopers argued before the trial court that Hydroculture could not establish its prima facie case, Hydroculture could have pointed to expert witness testimony, presented by affidavit in its response to the motion for summary judgment, stating that Coopers failed to comply with GAAP in auditing the financial statements.

### D.

Because we conclude the trial court erred by granting summary judgment on Hydroculture's auditing malpractice claim, we also necessarily conclude the trial court abused its discretion by precluding Hydroculture's expert from presenting testimony relevant to this issue. The trial court therefore erred in directing a verdict in favor of Coopers based on Hydroculture's lack of expert testimony.

### III.

In its cross-appeal, Coopers argues the court erred by denying its motions for summary judgment based on the statute of limitations and the doctrines of estoppel and waiver, and by denying its motion for security for costs.

█ In reviewing this appeal, we questioned whether we had jurisdiction over the cross-appeal and requested the parties to file supplemental briefs on this issue. Because we have jurisdiction over Hydroculture's appeal from a final judgment, we can review other "intermediate orders involving the merits of the action and necessarily affecting the judgment, and all orders and rulings assigned as error...." A.R.S. § 12–2102.A. The orders denying Coopers' motions for summary judgment involve the merits of the action and necessarily affect the judgment. *See State Farm Mutual Auto. Ins. Co. v. Peaton*, 168 Ariz. 184, 194, 812 P.2d 1002, 1012 (App.1990). Coopers assigns as error the order denying its motion for security for costs. The issues raised by Coopers in its cross-appeal therefore fall within the language of section 12–2102.A. We conclude we have jurisdiction over Coopers' cross-appeal.

### A.

Coopers contends the trial court erred by denying its motion for summary judgment because, as a matter of law, the two-year statute of limitations applicable to tort claims expired before Hydroculture brought this action. *See* A.R.S. § 12–542. In response, Hydroculture contends that, under the doctrine of equitable tolling, its filing of the counterclaim in bankruptcy court tolled the statute of limitations.

█ Coopers and Hydroculture presented conflicting evidence as to when Hydroculture knew or should have known of Coopers' alleged negligence[7] and as to Hydroculture's motives in filing the malpractice claim in bankruptcy court. We agree with the trial court's conclusion that these disputes present genuine issues of material fact as to whether Hydroculture acted reasonably and in good faith in filing its counterclaim in the bankruptcy court, a requirement for equitable tolling of the statute of limitations. The trial court therefore properly denied Coopers' motion for summary judgment. *See Orme*, 166 Ariz. at 309, 802 P.2d at 1008.

Coopers further contends the trial court erred by denying its subsequent motion for summary judgment asserting waiver and estoppel. That argument, however, again relies upon Coopers' assertion that Hydroculture signed and disseminated the financial statements, thereby representing the financial statements as accurate. We have already found disputed issues of material fact central to Hydroculture's "acceptance" of the financial statements. We therefore cannot conclude as a matter of law that Hydroculture's action is barred by the doctrines of waiver or estoppel.

### B.

█ Finally, Coopers contends the trial court erred by denying as untimely its motion for security for costs pursuant to Rule 67(d), Arizona Rules of Civil Procedure. Rule 67(d) provides in relevant part:

At any time before trial of an issue of law or fact, on motion of the defendant, supported by [an] affidavit showing that the plaintiff is not the owner of property

---

7. The statute of limitations in an accounting malpractice action begins to run when the plaintiff knows or in the exercise of reasonable care should know of the defendant's negligence or when the plaintiff is first able to sue. *Sato v. Van Denburgh*, 123 Ariz. 225, 227, 599 P.2d 181, 183 (1979) (citations omitted).

within the state out of which the costs could be made by execution sale, the court shall order the plaintiff to give security for the costs of the action.

A motion for security for costs made after the trial court has determined any issue of law or fact is untimely. *Wright v. Sears, Roebuck & Co.*, 116 Ariz. 391, 393, 569 P.2d 821, 823 (1977). An order granting summary judgment as a matter of law constitutes a "trial of an issue of law or fact" for purposes of Rule 67(d). *See Kimball v. Phoenix Newspapers*, 79 Ariz. 322, 325, 289 P.2d 193, 196 (1955). In this case, Coopers moved for security for costs three years after the trial court ruled on its motions for summary judgment and motion for reconsideration. Because the court had decided an issue of law before Coopers filed its motion, the court properly denied Coopers' motion for security for costs as untimely.

## IV.

For the foregoing reasons, we reverse the trial court's grant of summary judgment and directed verdict in favor of Coopers and affirm the trial court's denial of Coopers' motions for summary judgment and motion for security for costs.

GARBARINO, P.J., and HAIRE, J.,* concur.