IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

FILED BY CLERK

JAN 31 2007

COURT OF APPEALS
DIVISION TWO

DALE GORNEY,                          )
                                      )      2 CA-CV 2006-0075
            Plaintiff/Appellant,      )      DEPARTMENT B
                                      )
      v.                              )      O P I N I O N
                                      )
JOHN MEANEY; RINCON                   )
ORTHOPEDIC ASSOCIATES, P.C.,          )
                                      )
            Defendants/Appellees.     )
                                      )

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. C-20051862

Honorable Leslie Miller, Judge

AFFIRMED

Herbert Beigel & Associates
  By Herbert Beigel                                                  Tucson
                                              Attorneys for Plaintiff/Appellant

Slutes, Sakrison & Hill, P.C.
  By David E. Hill                                                   Tucson

and

Jones, Skelton & Hochuli, P.L.C.
  By Eileen Dennis Gilbride                                        Phoenix
                                           Attorneys for Defendants/Appellees

E S P I N O S A, Judge.

**¶1** Plaintiff/appellant Dale Gorney appeals from the trial court's grant of summary judgment in favor of Dr. John Meaney and Rincon Orthopedic Associates, P.C. ("Meaney") after finding Gorney had not complied with the expert witness requirements of A.R.S. § 12-2603. On appeal, Gorney argues the court misinterpreted the requirements of § 12-2603 and improperly granted summary judgment. We affirm.

## Factual and Procedural Background

**¶2** On appeal from a summary judgment, we view the evidence and all legitimate inferences therefrom in the light most favorable to the party against whom summary judgment was granted. *Wilson v. Playa de Serrano*, 211 Ariz. 511, ¶ 2, 123 P.3d 1148, 1149 (App. 2005). In October 1998, Meaney performed arthroscopic surgery on Gorney's left knee. In April 2005, Gorney sued Meaney for medical malpractice, alleging Meaney had "failed to inform [him] of the material risks of the surg[ery]"[1] and the surgery had caused his "condition to worsen." Meaney answered that he had informed Gorney of all material risks associated with the surgery. In July 2005, Meaney moved to dismiss the complaint on the grounds Gorney had failed to certify whether expert testimony was needed to prove his claim and had thereby violated the requirements of § 12-2603(A). Prior to oral argument on the

---

[1]Although the first count of Gorney's complaint is entitled "Battery," in the context of lawsuits against health care providers, Arizona courts distinguish between "battery," an intentional tort where the provider performs a medical procedure to which the patient has not consented, and "lack of informed consent," where the provider does not adequately disclose the risks and alternative treatments prior to performing the procedure. *See Duncan v. Scottsdale Med. Imaging, Ltd.*, 205 Ariz. 306, ¶ 11, 70 P.3d 435, 438-39 (2003). Gorney's allegations amount to "lack of informed consent," were treated as such below, and will be so treated on appeal.

motion, Gorney certified that his claim required expert testimony. At oral argument, the court gave Gorney until September 2005 to obtain an expert opinion affidavit to support his claim.

¶3 In late September, Gorney provided Meaney an expert opinion affidavit from Dr. Roy Gettel, who opined that "[p]rior to performing an arthroscopic surgery, [a] doctor must inform the patient of the risks of the surgery," and failure to do so "constitutes a breach of the applicable standard of care." In December 2005, Meaney moved for summary judgment, claiming this affidavit did not conform to the requirements of § 12-2603(B). Soon thereafter, Gorney provided a second affidavit from Gettel, which listed several treatment alternatives to arthroscopic surgery and stated "discussion should be made with the patient so that he has a complete understanding of the various treatment [options] available." After oral argument, the trial court granted Meaney's motion for summary judgment.

**Preliminary Expert Opinion Testimony**

¶4 Gorney contends the trial court's grant of summary judgment was based on an erroneous interpretation of § 12-2603(B). Because Gorney's argument involves the interpretation of a statute and a question of law, we review the trial court's judgment *de novo*. *See Dressler v. Morrison*, 212 Ariz. 279, ¶ 11, 130 P.3d 978, 980 (2006). In interpreting statutes, we first examine the plain language of the provisions involved. *Nordstrom v. Cruikshank*, 213 Ariz. 434, ¶ 14, 142 P.3d 1247, 1252 (App. 2006). When a statutory provision is clear on its face and is logically capable of only one interpretation, we give effect to that language and apply it without using other means of statutory construction, unless

applying the literal language would lead to an absurd result. *Arpaio v. Steinle*, 201 Ariz. 353, ¶ 5, 35 P.3d 114, 116 (App. 2001).

¶5        Section 12-2603(A) requires plaintiffs alleging medical malpractice to certify whether expert testimony will be needed to prove their claims. If so, the plaintiff must provide the defendant, within forty days of the defendant's responsive pleading, an expert opinion affidavit that supports the claim. § 12-2603(B). This affidavit "shall contain at least the following information":

> 1. The expert's qualifications to express an opinion on the health care professional's standard of care or liability for the claim.
>
> 2. The factual basis for each claim against a health care professional.
>
> 3. The health care professional's acts, errors or omissions that the expert considers to be a violation of the applicable standard of care resulting in liability.
>
> 4. The manner in which the health care professional's acts, errors or omissions caused or contributed to the damages or other relief sought by the claimant.

*Id*.

¶6        The first provision of the statute is not at issue on appeal; Meaney does not challenge Gettel's expert qualifications, and the first affidavit stated that Gettel's curriculum vitae was attached, although it is not in the record before us. Below, Meaney argued Gorney's expert opinion affidavits failed to "offer an opinion as to whether Dr. Meaney violated the applicable standard of care" and did "not state whether Dr. Meaney's care was the proximate cause of [Gorney's] injury," as required by the statute. The trial court agreed

4

and found Gorney had "failed to submit an affidavit in compliance with A.R.S. § 12-2603." On appeal, Gorney contends that informed consent claims are materially different from other medical malpractice claims, and despite the seemingly unambiguous requirements of the statute, the second, third, and fourth provisions of § 12-2603 (hereafter the "factual basis," "breach of duty," and "causation" provisions) should not be literally applied. For the reasons expressed below, we do not agree.

**"Factual Basis" and "Breach of Duty"**

¶7        The "factual basis" and "breach of duty" provisions of § 12-2603(B) require a plaintiff's expert to state the factual basis for the plaintiff's claims and list those acts the expert has determined fell below the applicable standard of care. § 12-2603(B)(2) and (3). Gorney argues that an expert in an informed consent case can have no personal knowledge of whether a patient was given adequate disclosure prior to the procedure—the expert can only know the facts as related by the patient—and is therefore unable to describe the defendant's actions and state they fell below the standard of care. Thus, Gorney maintains, for claims based on a lack of informed consent, the "factual basis" and "breach of duty" provisions of § 12-2603 should only require the expert to "(a) define the standard of care, to wit, the risks that should be told the patient" and state that "(b) failure to so inform the plaintiff would constitute a violation of the standard of care." To hold otherwise, he argues, would be tantamount to the expert's improperly finding facts and testifying about matters of credibility, matters exclusively reserved for the jury. *See Estate of Reinen v. N. Ariz.*

5

*Orthopedics, Ltd.*, 198 Ariz. 283, ¶ 12, 9 P.3d 314, 318 (2000) (evaluating credibility of witnesses particularly within province of jury).

**¶8**          Arizona courts have not yet addressed the requirements of § 12-2603; therefore, it is useful to look to other states with similar statutes. Arizona is among several states that have enacted legislation attempting to curb frivolous medical malpractice lawsuits by imposing a stricter standard of pleading and setting deadlines for the early involvement of the plaintiff's expert witness.[2] One state, Illinois, created a special exception to its more stringent pleading requirements for informed consent claims. Generally, Illinois requires plaintiffs' attorneys to attach to any complaint alleging medical malpractice an affidavit stating the attorney has consulted with a health care professional who "has determined in a written report . . . there is a reasonable and meritorious cause for filing of such action." 735 Ill. Comp. Stat. Ann. 5/2-622(a)(1) (2005). For informed consent claims, however, the attorney must only submit an affidavit stating an expert has "concluded that a reasonable health professional would have informed the patient of the consequences of the procedure." *Id*. at 5/2-622(d). Although not mentioned by Gorney, we note this provision is consistent with his argument for interpreting § 12-2603(B)(2) and (3).

---

[2]Other states that have enacted such legislation include Colorado, Florida, Georgia, Michigan, Minnesota, Missouri, Nevada, New Jersey, New York, and North Dakota. *See* Colo. Rev. Stat. § 13-20-602 (2005); Fla. Stat. § 766.104 (2002); Ga. Code Ann. § 9-11-9.1 (2006); Mich. Comp. Laws Ann. § 600.2912b (2000); Minn. Stat. § 145.682 (2004); Mo. Ann. Stat. § 538.225 (2005); Nev. Rev. Stat. 41A.071 (2002); N.J. Stat. Ann. § 2A:53A-27 (2004); N.Y. C.P.L.R. 3012-a(c) (McKinney 1991); N.D. Cent. Code § 28-01-46 (2005).

¶9        But Illinois's exception for informed consent claims was statutorily created. Section 12-2603 creates no such exception; indeed, the absence of any such language in our statute suggests Arizona's legislature did not intend to make one. *See City of Tempe v. Fleming*, 168 Ariz. 454, 457, 815 P.2d 1, 4 (App. 1991) (courts may not read into statutes something the legislature has not put there). Most states do except from their heightened pleading requirements for medical malpractice cases those claims that will not require expert testimony at trial.[3] Section 12-2603(A), too, excepts plaintiffs from providing an expert opinion affidavit where expert testimony will not be necessary at trial. Gorney certified, however, that such testimony would be required.

¶10        Where an expert must provide an affidavit attesting to facts of which the expert does not have personal knowledge, several states require that expert to simply accept the facts as alleged by the plaintiff. In Georgia, for example, "[a]n expert affidavit . . . need *not* be based upon the affiant's actual personal knowledge." *Dozier v. Clayton County Hosp. Auth.*, 424 S.E.2d 632, 638 (Ga. Ct. App. 1992). Instead, "the affiant may base his expert opinion upon an assumption that the factual allegations of the complaint are true[,] . . . just as he could base his expert opinion at trial upon an assumption of the truth of the evidence adduced to support those allegations." *Id*. The affidavit need only state "'that, in his expert

_____

[3]*See, e.g.*, Colo. Rev. Stat. § 13-20-602 (2005) and Minn. Stat. § 145.682 (2004) (expert testimony required only where necessary to establish *prima facie* case); *Hubbard ex rel. Hubbard v. Reed*, 774 A.2d 495, 501 (N.J. 2001) ("There is a common knowledge exception to [New Jersey's] Affidavit of Merit Statute . . . ."); N.Y. C.P.L.R. 3012-a(c) (McKinney 1991) (no affidavit required "[w]here the attorney intends to rely solely on the doctrine of 'res ipsa loquitur'").

opinion, such facts, *if true*, would constitute professional malpractice.'" *Id., quoting Druckman v. Ethridge*, 401 S.E.2d 336, 337 (Ga. Ct. App. 1991). Similarly, in Minnesota, an expert's affidavit may rely on "the acts or omissions that the plaintiff *alleges* violated the standard of care." *Teffeteller v. Univ. of Minn.*, 645 N.W.2d 420, 428 (Minn. 2002) (emphasis added).

¶11 The plain language of § 12-2603(B)(2) and (3) is clear on its face and logically capable of only one interpretation. For all medical malpractice claims that will require expert testimony at trial, including informed consent claims, the plaintiff's expert must state the "factual basis for each claim" and the "acts, errors or omissions that the expert considers to be a violation of the applicable standard of care." We agree with the trial court that neither of Gettel's affidavits meets these requirements. Neither describes what disclosures, if any, Meaney made to Gorney concerning the risks prior to performing the surgery. And neither affidavit states that Meaney's actions fell below the accepted standard of care. We find that where an expert does not have personal knowledge of the facts of the case, § 12-2603(B)(2) and (3) require that the expert base an opinion on the facts as alleged by the plaintiff and state that these facts, if true, violate the accepted standard of care.[4] Thus, Gettel's affidavits

---

[4]We note the ostensible tension between our holding here and Rule 56(e), Ariz. R. Civ. P., 16 A.R.S., Pt. 2, which states "[s]upporting and opposing affidavits shall be made on personal knowledge." But an expert is permitted to testify in the form of an opinion, *see* Ariz. Rule Evid. 702, 17A A.R.S., and § 12-2603 merely requires an expert to attest to his or her opinion, informed by the body of his or her personal knowledge as an expert, as to whether the defendant's actions as they are alleged by the plaintiff constitute medical malpractice. Thus, Rule 56(e) does not prevent an appropriate affidavit from addressing the elements of § 12-2603.

should have listed what disclosures Meaney made to Gorney prior to performing the surgery, based upon the facts as alleged by Gorney. Gettel should have then stated whether these disclosures were inadequate and fell below the standard of care.

¶12 This conclusion is consistent with the legislature's express purpose of "curtail[ing] the filing of frivolous lawsuits against health care professionals." 2004 Ariz. Sess. Laws, ch. 4, § 2. To effectively evaluate the merits of a lawsuit, an expert must be fully aware of the facts alleged by the plaintiff. There would be no check on the filing of frivolous claims if an expert were permitted to simply recite a standard of care and generally state that failure to meet the standard constitutes malpractice. Under such an interpretation, meritorious and frivolous cases alike could be prosecuted without passing any meaningful scrutiny by an expert. Therefore, we reject Gorney's proposed interpretation of § 12-2603(B)(2) and (3). Instead, we hold an expert must apply the facts of the particular case at hand to the applicable standard of care and issue an opinion as to whether the defendant's specific actions met or fell short of that standard. *See generally Pendleton v. Cilley*, 118 Ariz. 84, 86, 574 P.2d 1303, 1305 (1978) ("[A] physician's negligence must be shown by expert medical testimony . . . .").

**"Causation"**

¶13 Gorney next contends that the "causation" provision of § 12-2603(B)(4) need not be addressed by an expert opinion affidavit in an informed consent claim because "the injury of proceeding with a surgery at all in the absence of informed consent is established

9

without regard to expert testimony." Meaney responds that § 12-2603 makes no exception from its requirements for claims based on lack of informed consent.

¶14    We again disagree with Gorney's proposed interpretation of § 12-2603. Contrary to Gorney's assertion, a medical procedure performed without informed consent does not, in itself, proximately cause an actionable injury to a plaintiff; rather, a plaintiff must show he or she has suffered some injury as a result of the undisclosed risk. *See Hales v. Pittman*, 118 Ariz. 305, 311, 576 P.2d 493, 499 (1978) ("failure of a physician to disclose a known risk does not, standing alone, constitute sufficient grounds for a malpractice action"; occurrence of risk must be harmful to patient since negligence unrelated to injury is nonactionable).

¶15    Traditionally, plaintiffs alleging lack of informed consent must show two types of causation: 1) adequate disclosure would have caused the plaintiff to decline the treatment, and 2) the treatment proximately caused injury to the plaintiff. *See Shetter v. Rochelle*, 2 Ariz. App. 358, 367, 409 P.2d 74, 83 (1965); William L. Prosser and W. Page Keeton, *The Law of Torts* § 32, at 191 5th ed. (1984); *see also Hales*, 118 Ariz. at 311, 576 P.2d at 499; *McGrady v. Wright*, 151 Ariz. 534, 537, 729 P.2d 338, 341 (App. 1986); *Gurr v. Willcutt*, 146 Ariz. 575, 581, 707 P.2d 979, 985 (App. 1985). Expert testimony is not required for the first type of causation because it is plainly a matter to which plaintiffs themselves could testify and is within the knowledge of the average layperson. *See generally Adams v. Amore*, 182 Ariz. 253, 895 P.2d 1016 (App. 1994) (function of expert witness is to provide testimony

10

on subjects beyond common sense, experience, or education of average person, and expert testimony is inappropriate if jury can determine issue without such testimony).

¶16 Expert testimony is required, however, to demonstrate that the treatment proximately caused injury to the plaintiff. *Gregg v. Nat'l Med. Health Care Servs., Inc.*, 145 Ariz. 51, 54, 699 P.2d 925, 928 (App. 1985) (generally, expert medical testimony is required to establish proximate cause). Such testimony helps to ensure that the plaintiff's alleged injury was not caused by the progression of a pre-existing condition or was the result of some other cause, such as natural aging or a subsequent injury. This, again, is in keeping with the legislature's intent to curtail frivolous medical malpractice claims. *See* 2004 Ariz. Sess. Laws, ch. 4, § 2. Thus, Gorney's expert opinion affidavit should have stated that the surgery proximately caused an injury to Gorney, e.g., the "worsen[ed]" condition in Gorney's knee.[5] Because it did not, the trial court properly found the requirements of § 12-2603(B)(4) were not met.

## Lack of Statement of Facts

¶17 Gorney lastly argues the trial court should have either struck or denied Meaney's motion for summary judgment because it did not include a statement of facts, as

---

[5]We note that Meaney attached to his answering brief an affidavit by Dr. Gettel that states "the removal of the meniscus in [Gorney's] knee caused him to have degenerative arthritis and medial collapse." Both parties refer to this affidavit in their briefs, and the affidavit would seemingly satisfy the "causation" provision of A.R.S. § 12-2603. The above-quoted language, however, is not part of the affidavit that is in the record on appeal. Thus, that language cannot be considered. *See Crook v. Anderson*, 115 Ariz. 402, 403-04, 565 P.2d 908, 909-10 (App. 1977) (on appeal from summary judgment, parties cannot produce new affidavits to secure reversal of lower court's determination).

required by Rule 56(c)(2), Ariz. R. Civ. P., 16 A.R.S., Pt. 2. Generally, summary judgment is proper "if the pleadings, deposition[s], answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Ariz. R. Civ. P. 56(c)(1). Summary judgment is also appropriate when a plaintiff fails to establish a *prima facie* case. *Hydroculture, Inc. v. Coopers & Lybrand*, 174 Ariz. 277, 283, 848 P.2d 856, 862 (App. 1992).

¶18        Rule 56(c)(2) states that "[a]ny party filing a motion for summary judgment shall set forth, separately from the memorandum of law, the specific facts relied upon in support of the motion." Gorney argues he was disadvantaged in his ability to show the existence of genuine issues of material fact because Meaney failed to comply with this rule. Meaney does not deny that his motion lacked a statement of facts, but argues that one was not required in this case and nothing in Rule 56 indicates that failure to provide one is a ground for denial of a motion.

¶19        We agree that a trial court need not deny a motion for summary judgment for the sole reason it is not supported by a statement of facts. Although a statement of facts is especially useful when a court must sort through myriad factual contentions, it may be less so when a defendant seeks summary judgment on the ground the plaintiff has failed to comply with statutory requirements or establish a *prima facie* case, as was the case here.

¶20        Gorney certified that expert testimony was required to support his claim; therefore, he was required to provide such testimony to establish a *prima facie* case. *See Gregg*, 145 Ariz. at 54, 699 P.2d at 928 (ordinarily, expert medical testimony required to

12

make *prima facie* case of medical malpractice). Summary judgment was appropriate when Gorney failed to provide an adequate expert opinion affidavit. *See Hydroculture, Inc.*, 174 Ariz. at 283, 848 P.2d at 862 (defendant may obtain summary judgment when plaintiff unprepared to establish *prima facie* case). Accordingly, we do not find the trial court erred in granting Meaney's motion for summary judgment, even in the absence of a statement of facts. *See McGuire v. DeFrancesco*, 168 Ariz. 88, 90, 811 P.2d 340, 342 (App. 1990) (in response to motion for summary judgment, medical malpractice plaintiff must show expert testimony available to establish health care provider's treatment fell below applicable standard of care).

**Disposition**

¶21        For all the foregoing reasons, the judgment in favor of Meaney is affirmed.


                                                    _____
                                                    PHILIP G. ESPINOSA, Judge

CONCURRING:



_____
PETER J. ECKERSTROM, Presiding Judge



_____
J. WILLIAM BRAMMER, JR., Judge