NOTICE: NOT FOR PUBLICATION.
UNDER ARIZ. R. SUP. CT. 111(c), THIS DECISION DOES NOT CREATE LEGAL PRECEDENT
AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

RUSTICA D., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, R.S., R.W., *Appellees*.

No. 1 CA-JV 14-0136
FILED 10-28-2014

Appeal from the Maricopa County Superior Court
No. JD23174
The Honorable Joan Sinclair, Judge

**AFFIRMED**

COUNSEL

Maricopa County Office of the Public Advocate, Mesa
By Suzanne Sanchez
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Nicholas Chapman-Hushek
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

---

Judge Lawrence F. Winthrop delivered the decision of the Court, in which Presiding Judge Patricia K. Norris and Judge John C. Gemmill joined.

---

**W I N T H R O P,** Judge:

**¶1**      Rustica D. ("Mother") appeals the juvenile court's order terminating her parental rights to R.S. and R.W. (collectively, "the children"). Mother alleges (1) the juvenile court erred when it found Mother in default because she established good cause for her non-appearance at a pre-trial hearing; (2) Child Protective Services ("CPS") failed to make diligent efforts to reunify Mother with the children; and (3) the juvenile court abused its discretion when it determined that termination of the parent-child relationship was in the children's best interest.[1] For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY**

**¶2**      Mother is the biological parent of R.S. and R.W. The natural father of R.S. is deceased. Eddie W. is R.W.'s biological father.[2] In January 2013, Mother placed the children with a paternal aunt, stating she could no longer care for them. The police were contacted the following day when Mother appeared at the paternal aunt's home acting erratically. Following this incident, Mother was placed in a psychiatric facility for two weeks, where she was diagnosed with Bipolar Disorder and Post-Traumatic Stress Disorder. ADES offered Mother a forty-five day safety plan to ensure that her mental health issues were being addressed, but Mother refused to sign, as she felt she no longer needed follow-up treatment.

---

[1]      In May 2014, CPS was removed as an entity within the Arizona Department of Economic Security ("ADES") and replaced by the Department of Child Safety ("DCS"), an entity outside of ADES. In its answering brief, DCS refers to the parties as they existed at the time of the proceedings, and so do we.

[2]      Eddie W. has not appealed the subsequent severance of his parental rights and is not a party to this case.

¶3            ADES filed a dependency petition on January 31, 2013, alleging Mother neglected the children due to her mental health issues. In March 2013, Mother failed to attend a pre-trial conference hearing, and the juvenile court found Mother waived her rights. Accordingly, the court conducted the dependency hearing in Mother's absence, heard testimony from a CPS case manager, and found the children dependent as to Mother. At that time, the case plan was family reunification concurrent with severance and adoption. ADES offered Mother several services including urinalysis testing, counseling, a referral for a psychiatric evaluation, and parent aide services. Mother was also offered weekly visits with the children.

¶4            In November 2013, the court changed the case plan to severance and adoption. ADES filed a motion for termination of the parent-child relationship in January 2014, alleging three specific grounds. First, ADES asserted Mother was unable to discharge her parental responsibilities because of mental illness and there were reasonable grounds to believe the condition will continue for a prolonged indeterminate period. *See* Ariz. Rev. Stat. ("A.R.S.") § 8-533(B)(3).[3] Second, ADES alleged the children had been in an out-of-home placement for a cumulative total period of nine months or longer, pursuant to a court order. *See id.* at § 8-533(B)(8)(a). Last, ADES alleged that R.W., who was then under three years old, had been in an out-of-home placement for a cumulative total period of six months or longer, pursuant to a court order. *See id.* at § 8-533(B)(8)(b). ADES also alleged the best interests of the children were served by terminating the parent-child relationship. *See id.* at § 8-533(B).

¶5            Mother appeared at a scheduled mediation regarding the termination of her parental rights on March 20, 2014, but the parties failed to reach an agreement. When Mother failed to appear at a scheduled pre-trial conference six days later, the court found Mother had waived her rights and conducted the termination hearing in her absence. A CPS case manager testified regarding the services provided by ADES, indicating that Mother had successfully completed the work with the parent aide, but failed to contact the counseling services for six months, causing the referral to expire. The CPS case manager stated Mother had been notified that CPS had recently renewed Mother's counseling referral. The CPS case manager further testified that the psychiatric evaluation recommended Mother

---

[3]            We cite the current version of the statutes if no revisions material to our decision have occurred since the relevant dates.

receive individual counseling and that Mother's mental issues "place[d] a child or children in her care at risk." After considering the testimony and evidence presented at the hearing, in an unsigned minute entry, the court terminated the parent-child relationship between Mother and the children.

¶6            Mother filed a motion for reconsideration and to set aside the court's finding of default and the order of termination, alleging she had mistakenly believed the hearing was scheduled in April instead of March. She did not submit an affidavit explaining why she was of that belief, nor identifying any evidence that she had been misled in that regard by ADES, CPS, her counsel, or the juvenile court. Mother also did not submit any affidavit or offer of proof as to the testimony or other evidence she intended to submit had the termination hearing not proceeded in her absence. The court denied Mother's motion, finding Mother did not have good cause for failing to appear at the pre-trial conference. On May 6, 2014, the juvenile court issued an order terminating the parent-child relationship between Mother and the children. Mother filed a timely notice of appeal. We have appellate jurisdiction pursuant to the Arizona Constitution, Article 6, Section 9; A.R.S. § 8-235(A); and Rule 103(A) of the Arizona Rules of Procedure for the Juvenile Court.

## ANALYSIS

¶7            Mother presents three issues for review: (1) whether the juvenile court erred when it found Mother in default because she allegedly established good cause for her non-appearance; (2) whether CPS failed to make diligent efforts to reunify Mother with the children; and (3) whether the juvenile court abused its discretion when it determined that termination of the parent-child relationship was in the children's best interest.

   I.      *The juvenile court did not abuse its discretion when it found Mother in default.*[4]

---

[4]      ADES asserts Mother is essentially contesting the juvenile court's decision to deny her motion to reconsider and set aside the default finding. ADES claims this court lacks jurisdiction to decide this issue because Mother did not appeal this ruling within 15 days. *See* Ariz. R.P. Juv. Ct. 104(A). We disagree. Mother filed her motion for reconsideration on April 2, 2014. The juvenile court denied her motion on April 8, 2014. The final order terminating Mother's parental rights was entered on May 6, 2014, and Mother timely appealed. An appellate court "can review other intermediate orders involving the merits of the action and necessarily

¶8        We review a finding of good cause for failure to appear for an abuse of discretion and will reverse the juvenile court's finding "only if the juvenile court's exercise of that discretion was manifestly unreasonable." *Adrian E. v. Ariz. Dep't of Econ. Sec.*, 215 Ariz. 96, 101, ¶ 15, 158 P.3d 225, 230 (App. 2007) (internal citations and punctuation omitted). "In order to show good cause, the moving party must show that (1) mistake, inadvertence, surprise or excusable neglect exists and (2) a meritorious defense to the claims exists." *Christy A. v. Dep't of Econ. Sec.*, 217 Ariz. 299, 304, ¶ 16, 173 P.3d 463, 468 (App. 2007) (citation omitted). "Excusable neglect exists if the neglect or inadvertence 'is such as might be the act of a reasonably prudent person in the same circumstances.'" *Id*. at 304, ¶ 16, 173 P.3d at 468. A meritorious defense is a good faith basis to challenge the petitioner's allegation that termination is in the best interests of the child. *Id*. at 304 n.11, ¶ 15, 173 P.3d at 468 n.11.

¶9        In both her motion to reconsider and this appeal, Mother alleges she failed to appear at the pre-trial hearing because she misunderstood the court date. In addition, Mother claims to have a meritorious defense, stating simply that she planned to contest ADES' contention that termination of the parent-child relationship was in the children's best interests. On the record before the juvenile court, we cannot say the court's exercise of discretion in denying the motion was manifestly unreasonable. While Mother's counsel claimed Mother's absence during the hearing was abnormal as "she's usually here for everything," the CPS case manager avowed to the juvenile court that he had been in contact with Mother and she was "well aware of this court date." Despite the assertions of Mother's counsel, this was not the first time Mother failed to appear at a hearing and thus waived her rights in this matter. Moreover, Mother signed a Form III in February 2014, which informed Mother that failing to attend a hearing without good cause could allow the court to determine Mother waived her legal rights. Mother attended a report and review hearing on February 5, 2014, where the parties were informed that the next pre-trial conference would be held on March 26, and Mother was again provided with another Form III. Furthermore, Mother's conclusory

affecting the judgment, and all orders and rulings assigned as error when it has jurisdiction over an appeal from a final judgment." *Hydroculture, Inc. v. Coopers & Lybrand*, 174 Ariz. 277, 284, 848 P.2d 856, 863 (App. 1992) (internal punctuation omitted); *see Reid v. Reid*, 20 Ariz. App. 220, 221, 511 P.2d 664, 665 (1973) (stating that an unsigned minute entry is not a judgment, thus a court may amend any rulings contained therein before or at the final judgment); *see also* A.R.S. § 12-2102(A). Accordingly, this issue is properly raised before this court.

statement that she intended to contest ADES' allegations as a meritorious defense is insufficient, as it provides no further details or facts to substantiate Mother's claim. *See Richas v. Superior Court*, 133 Ariz. 512, 517, 652 P.2d 1035, 1040 (1982) (stating "[a] meritorious defense must be established by facts and cannot be established through conclusions, assumptions or affidavits based on other than personal knowledge"). Accordingly, we find no abuse of discretion.

> II. *Mother did not assert CPS failed to make diligent efforts to reunify Mother with the children in the juvenile court; thus, Mother has waived this issue on appeal.*

**¶10** Mother offers few examples of CPS's alleged failure to make diligent reunification efforts. Additionally, this issue was not presented to the juvenile court, but is raised for the first time on appeal. In her opening brief, Mother states CPS referred her to a counseling agency but it was "difficult" for both Mother and the CPS case manager to contact the agency. Because Mother could not reach the counseling agency, the referral expired, and the CPS case manager had to renew the referral before Mother could attempt to contact the agency. Mother alleges because she was informed of the renewal only six days before the hearing where her parental rights were terminated, CPS did not provide her the time and opportunity to partake in the counseling.

**¶11** CPS's obligation to make diligent efforts for reunification does not relieve "a parent from the need to raise a timely objection if the parent believes services are inadequate." *Shawanee S. v. Ariz. Dep't of Econ. Sec.*, 234 Ariz. 174, 178, ¶¶ 12-13, 319 P.3d 236, 240 (App. 2014). A challenge to ADES' efforts for reunification must first be raised in the juvenile court and can be done during any number of proceedings, including a dependency hearing, periodic review hearings, and a termination hearing. *Id*. at ¶¶ 13-14. "[W]hen the juvenile court record reflects that ADES has been ordered to provide specific services in furtherance of the case plan, and the court finds that ADES has made reasonable efforts to provide such services . . . a parent who does not object in the juvenile court is precluded from challenging that finding on appeal." *Id*. at 179, ¶ 16, 319 P.3d at 241 (internal citations omitted).

**¶12** On the record before this court, which includes several minute entries reflecting various hearings over the course of a year, we conclude Mother has waived her argument that ADES failed to make reasonable efforts for reunification. First, the juvenile court specifically found ADES made reasonable efforts at reunification. Next, the record

shows Mother never objected to ADES' efforts for reunification or to the services offered to her in the juvenile court. Mother's only asserted complaint on appeal is that it was "difficult" to reach the counseling services; however, Mother's failure to contact the service agency, which led to the expiration of ADES' referral, does not reflect adversely on ADES' efforts to provide meaningful reunification services. It is not ADES' responsibility to ensure Mother participates in the services she is offered. *See Maricopa Cnty. Juv. Action No. JS-501904*, 180 Ariz. 348, 353, 884 P.2d 234, 239 (App. 1994) (stating ADES is not required to ensure that a parent engages in the services offered to that parent). In addition, it is imperative Mother raise these concerns with the juvenile court, which allows the court the opportunity to address these concerns to ensure ADES is meeting its obligations. *Shawanee S.*, 234 Ariz. at 179, ¶ 18, 319 P.3d at 241. Because Mother failed to address this issue in the juvenile court, Mother has waived this issue on appeal.

III. *Termination of the parent-child relationship between Mother and the children serves the best interests of the children.*

**¶13**     Mother asserts the juvenile court erred in finding the best interests of the children were served by terminating her parental rights. An abuse of discretion occurs when the record is "devoid of competent evidence to support the decision of the [juvenile] court." *Fought v. Fought*, 94 Ariz. 187, 188, 382 P.2d 667, 668 (1963). This court will not substitute our opinion for that of the juvenile court unless the court's findings are clearly erroneous. *Pima Cnty. Dependency Action No. 93511*, 154 Ariz. 543, 545, 744 P.2d 455, 457 (App. 1987) (citation omitted). While a parent's failure to appear may be deemed an admission of the allegations set forth in the motion to terminate, it is the duty of the juvenile court "to determine whether the grounds for termination have been proven by the record and evidence." *Manuel M. v. Ariz. Dep't of Econ. Sec.*, 218 Ariz. 205, 213, ¶ 28, 181 P.3d 1126, 1134 (App. 2008) (internal citation omitted). The juvenile court may proceed when a parent fails to appear but is represented by counsel as the parent's rights are protected by counsel's presence and participation. *Christy A.*, 217 Ariz. at 307, ¶ 25, 173 P.3d at 471.

**¶14**     Despite Mother's absence at the pre-trial hearing, Mother's counsel actively participated in the hearing, including reviewing ADES' exhibits and cross-examining ADES' only witness. After reviewing the evidence and testimony taken during the hearing, the juvenile court found two grounds for termination of the parent-child relationship between Mother and the children and that termination served the best interests of the children because "[t]he children are adoptable and adoption will

provide them with permanency and stability."[5] On appeal, Mother asserts she intended to present evidence, "such as her own testimony" to demonstrate termination of her parental rights was not in the best interests of the children. Contrary to Mother's assertion, nothing in the record indicates the juvenile court abused its discretion in terminating Mother's parental rights. Mother's counsel had the opportunity to object to ADES' exhibits, to cross-examine ADES' witness during the hearing, and to offer evidence and arguments to the court in support of Mother's position as it related to the "best interests" issue. Moreover, Mother points to no other evidence other than her potential testimony in general that could have impacted the juvenile court's decision. Accordingly, the juvenile court did not abuse its discretion in finding that termination of the parent-child relationship was in the children's best interests.

## CONCLUSION

¶15        For the foregoing reasons, we affirm.



Ruth A. Willingham · Clerk of the Court
FILED: gsh

---

[5]        The juvenile court found three grounds for terminating the parent-child relationship as to R.W. only.