NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

BENJAMIN AGUILERA, et al., *Plaintiffs/Appellants*,

*v.*

JOEL E. SANNES, et al., *Defendants/Appellees*.

No. 1 CA-CV 19-0029
FILED 1-21-2020

Appeal from the Superior Court in Maricopa County
No. CV2016-016126
The Honorable Christopher A. Coury, Judge

**AFFIRMED**

COUNSEL

Wilenchik & Bartness, P.C., Phoenix
By Dennis I. Wilenchik, Christopher A. Meyers
*Counsel for Plaintiffs/Appellants*

Jones, Skelton & Hochuli, P.L.C., Phoenix
By Charles M. Callahan, Robert R. Berk, Lori L. Voepel, Alejandro D. Barrientos
*Counsel for Defendants/Appellees*

---

## MEMORANDUM DECISION

Judge Lawrence F. Winthrop delivered the decision of the Court, in which Presiding Judge Jennifer B. Campbell and Judge Michael J. Brown joined.

---

**W I N T H R O P**, Judge:

¶1        Benjamin Aguilera, an Arizona attorney and defendant in a civil lawsuit, hired Joel E. Sannes to represent him.  Sannes represented Aguilera through several years of litigation, until Aguilera's current counsel replaced Sannes.  Aguilera later settled the case against him, then filed a legal malpractice lawsuit against Sannes, claiming Sannes had fallen below the standard of care in his representation of Aguilera, primarily because he failed to tender Aguilera's defense to Aguilera's former law firm, Greenberg Traurig, L.L.P. ("Greenberg") or Greenberg's malpractice insurance carrier, Lloyd's of London ("Lloyd's"), after Aguilera had asked Sannes to do so.  Aguilera alleged Sannes' negligence caused Aguilera to incur litigation costs he otherwise would not have incurred.  Sannes moved for summary judgment, and the superior court granted the motion after concluding Aguilera could not show that either Lloyd's or Greenberg would have financially contributed to Aguilera's defense or settlement, and therefore could not establish that, even if the alleged malpractice occurred, it had caused Aguilera damage.[1]  Aguilera appealed, and for the following reasons, we affirm.

### FACTS AND PROCEDURAL HISTORY

¶2        This court issued two decisions in the underlying lawsuit against Aguilera, and those decisions chronicle many of the facts helpful to understanding what led to the current lawsuit.  *See Chonczynski v. RY Dev. Co.* (*Chonczynski I*), 1 CA-CV 08-0296, 2009 WL 1138080 (Ariz. App. Apr. 28, 2009) (mem. decision); *Chonczynski v. Aguilera* (*Chonczynski II*), 1 CA-CV 13-0728, 2014 WL 6790738 (Ariz. App. Dec. 2, 2014) (mem. decision) (review

---

[1]        "[A] plaintiff asserting legal malpractice must prove the existence of a duty, breach of duty, *that the defendant's negligence was the actual and proximate cause of injury*, and the 'nature and extent' of damages."  *Glaze v. Larsen*, 207 Ariz. 26, 29, ¶ 12 (2004) (emphasis added) (citation omitted).

denied May 26, 2015). For context, we provide a brief overview of that litigation.

### I. The Underlying Litigation

#### A. Chonczynski I

¶3 In 1997, Gisela and Edmund Chonczynski ("the Chonczynskis") entered an agreement with RY Development Company ("RY") to purchase a lot in the Del Mar real estate development in Puerto Peñasco (aka Rocky Point), Sonora, Mexico. *See Chonczynski I*, 1 CA-CV 08-0296, at *1, ¶¶ 2-3; *Chonczynski II*, 1 CA-CV 13-0728, at *1, ¶ 2. Phoenix Holdings II, L.L.C. ("PH II"), an entity controlled by Brent Hickey and Robert Burns, had entered an agreement in 1996 to oversee the marketing and sales of the Del Mar community to American buyers, and the Chonczynskis presented a check for final payment to Hickey at the offices of PH II in Phoenix in July 1997. *See Chonczynski I*, 1 CA-CV 08-0296, at *1, ¶ 4 & n.1. The Chonczynskis constructed a beach house on the property, which they later lost in 2005 as part of a lawsuit/foreclosure action in Mexico stemming from a dispute that began in 2001 involving RY and a Mexican labor union. *See id.* at *1-2, ¶¶ 6-9; *Chonczynski II*, 1 CA-CV 13-0728, at *1, ¶¶ 2-6.

¶4 Aguilera became involved in 2004 when PH II retained him to assist with matters related to Del Mar and the pending RY/labor union dispute. *See Chonczynski II*, 1 CA-CV 13-0728, at *1, ¶ 4. Aguilera began representing PH II, and consequently, RY's interests in Del Mar. *Id.* The labor union had obtained a lien on several undeveloped properties in Del Mar, and Aguilera negotiated with and allegedly bribed union officials to substitute the Chonczynskis' property for those other properties as the subject of the lien. *Id.* at ¶ 5. In February 2005, the labor union sold the Chonczynskis' lot and house at a private auction to Aguilera, the sole bidder, who transferred it to Inmobiliaria Tomka, S.A. de C.V. ("Inmobiliaria"), a Mexican corporation. *Chonczynski I*, 1 CA-CV 08-0296, at *2, ¶ 10; *Chonczynski II*, 1 CA-CV 13-0728, at *1, ¶¶ 5-6. Aguilera was the president of and held a controlling interest in Inmobiliaria, which then held title to the property, ostensibly for the benefit of RY and/or PH II.[2] *See*

---

[2] Also, through another company he and his wife controlled, Diamante 907, L.L.C., Aguilera entered a profit-sharing agreement in 2005 with PH II tied to Del Mar and other property in Mexico.

*Chonczynski I*, 1 CA-CV 08-0296, at *2, ¶ 10; *Chonczynski II*, 1 CA-CV 13-0728, at *1, ¶ 6.

¶5            In 2007, the Chonczynskis sued Aguilera, Inmobiliaria, RY, and Gary Yahnke, RY's managing partner, alleging contract and tort claims arising out of conduct related to the various transactions associated with the real estate development. *See Chonczynski I*, 1 CA-CV 08-0296, at *2, ¶ 12. The tort claims included statutory and common law fraud claims. *Id.* In part, the complaint alleged Aguilera and Inmobiliaria "actively and intentionally aided, abetted and co-conspired with the other Defendants to deprive the [Chonczynskis] of their money and property."

¶6            At the time he was named and served with an amended complaint in June 2007, Aguilera was a shareholder at Greenberg. Although Aguilera was sued, the firm was not,[3] and Aguilera was only a few days away from formally leaving Greenberg (he had given his two-weeks' notice approximately ten days earlier) and forming his own law firm, Aguilera Lindsey, L.L.P. ("Aguilera Lindsey").[4]    Before leaving, Aguilera did not inform anyone at Greenberg of the Chonczynskis' lawsuit. Instead, Aguilera personally hired Sannes to represent him. When Aguilera hired Sannes, Aguilera had not yet procured professional liability insurance for his new law firm. However, Aguilera's defense was initially paid for by PH II, which along with Hickey and Burns, claimed an ownership interest in RY.

¶7            On behalf of Aguilera and other defendants, Sannes immediately moved to dismiss the complaint. *Id.* at *2, ¶ 13. The superior court dismissed all claims on statute-of-limitations grounds. *Id.* at ¶ 14. In April 2009, however, this court reversed the dismissal with regard to the Chonczynskis' tort and unjust enrichment claims and remanded the case to the superior court. *Id.* at *11, ¶ 67; *Chonczynski II*, 1 CA-CV 13-0728, at *2, ¶ 8.

---

[3]    The Chonczynskis' complaint(s) did not mention Greenberg or Aguilera's employment with Greenberg and did not allege professional negligence on Aguilera's part. In their Second Amended Complaint, the Chonczynskis alleged Aguilera was "an advisor to Yahnke and RY," "an officer and director of Inmobiliaria," and "in the direct or indirect employ of RY and [PH II]."

[4]    Aguilera later returned to employment with Greenberg in 2017.

### B. *Chonczynski II*

**¶8**      In March 2010, the superior court dismissed all claims against Inmobiliaria and all claims against Aguilera, except aiding and abetting fraud and unjust enrichment. *Chonczynski II*, 1 CA-CV 13-0728, at *2, ¶ 8. PH II eventually stopped funding Aguilera's defense, although Sannes continued representing Aguilera. Meanwhile, in a January 2010 e-mail to Aguilera, Sannes had "wondered why we have not submitted this case to your [current] malpractice carrier," but noted "[i]t might not be covered as a third-party lawsuit against you, as opposed to a client's lawsuit against you or your firm." Neither Sannes nor Aguilera tendered the defense to Aguilera's insurance carrier, however, and Sannes eventually concluded the Aguilera Lindsey policy would not cover Aguilera in connection with the Chonczynskis' lawsuit.

**¶9**      By June 2012, Aguilera had broached with Sannes the subject of tendering Aguilera's defense to Greenberg or Greenberg's malpractice insurance carrier, Lloyd's. Aguilera indicated he would contact Greenberg regarding the insurance issue. In May 2013, however, Aguilera requested that Sannes tender the defense to Greenberg, but Sannes declined and suggested that Aguilera do so.

**¶10**      In June 2013, RY and Yahnke settled the Chonczynskis' claims against them, leaving Aguilera as the only remaining defendant. *Id.* at ¶ 9. Aguilera immediately moved for summary judgment on the basis that the RY/Yahnke settlement extinguished all remaining claims against him. *Id.* at ¶ 10. The superior court agreed, granted summary judgment in favor of Aguilera, *id.*, and awarded Aguilera attorneys' fees. *Id.* at *7, ¶ 30.

**¶11**      The Chonczynskis again appealed, arguing their settlement with the parties they alleged had defrauded them (RY and Yahnke), did not bar their claim against Aguilera for aiding and abetting that fraud. *Id.* at *1, ¶ 1. Concluding that Aguilera was not absolved of liability by virtue of the release of RY and Yahnke, this court in December 2014 again reversed, explaining that "the superior court did not make any factual finding that RY and Yahnke did not commit the fraud upon which Aguilera's alleged aiding and abetting liability [was] premised." *Id.* at *3, ¶¶ 13-14. We noted "the Chonczynskis alleged Aguilera manipulated the auction and obtained control of Inmobiliaria [] to obfuscate RY's fraud and to extinguish any claim to the property the Chonczynskis might be able to assert," *id.* at *2, ¶ 7, and "Aguilera's alleged liability d[id] not arise solely from the wrongful conduct of RY/Yahnke, but from alleged substantial assistance he provided to RY/Yahnke in connection with their alleged fraud," *id.* at

*3, ¶ 16. As a result, the Chonczynskis' settlement with the other defendants "did not, as a matter of law, prevent them from going forward with their aiding and abetting claim against Aguilera." *Id.* at * 5, ¶ 20; *see also id.* at *7, ¶ 31.

**¶12** Sannes continued to represent Aguilera until November 2015,[5] when Aguilera's current counsel, Wilenchik & Bartness, P.C., substituted in as counsel.[6] In July 2016, Aguilera and the Chonczynskis entered a settlement, with Aguilera agreeing to pay $62,500 to the Chonczynskis, who agreed to withdraw their lawsuit and a previously filed bar complaint against Aguilera.[7] By this point in time, Aguilera had incurred $328,000 in legal expenses incurred in defending the Chonczynski litigation.

    II.    *This Litigation*

    A.  *Aguilera's Lawsuit Against Sannes*

**¶13** Approximately three months later, in October 2016, Aguilera sued Sannes, alleging Sannes had fallen below the applicable standard of care and committed attorney malpractice, primarily because he failed to tender Aguilera's defense to Greenberg or its carrier, Lloyd's, after Aguilera

---

[5] According to Aguilera, a conflict of interest arose when Sannes moved to a new law firm.

[6] Aguilera's new counsel also did not tender Aguilera's defense to either Greenberg or Lloyd's.

[7] Neither the terms of the settlement nor the Chonczynskis' letter to the State Bar of Arizona unequivocally stated that Aguilera had not committed fraud. Instead, the settlement agreement provided that "no Party is admitting or acknowledging any wrongdoing whatsoever," and the Chonczynskis' letter simply stated, "We have resolved the matter." Less than one month after the parties entered their settlement, bar counsel summarily dismissed the charges against Aguilera. We note the bar complaint was dismissed prior to Aguilera's deposition in this malpractice action, where he was questioned at length about the nature of his involvement with PH II, RY, and Del Mar, and the actions he took relative to the Chonczynskis' property.

asked Sannes to do so, thereby causing Aguilera to incur litigation costs he otherwise would not have incurred.[8]

### B. Sannes' Motion for Summary Judgment

**¶14**        After discovery closed, Sannes moved for summary judgment, arguing in pertinent part that, even assuming *arguendo* he had fallen below the standard of care with respect to the tender of defense issue, Aguilera had no evidence of, and could not prove, causation.  Specifically, Sannes argued that, in order to establish liability, Aguilera needed to prove that if his defense had been tendered, Greenberg or Lloyd's would have accepted and paid for Aguilera's defense, and Aguilera had produced no such evidence, only speculation.

**¶15**        With regard to Lloyd's, Sannes argued the insurance policy Aguilera claimed would have paid his defense costs ("the Greenberg Policy") contained a $7.5 million retention (akin to a deductible) for each claim.  Because Aguilera claimed only $328,000 in damages, Sannes explained, the Greenberg Policy on which Aguilera relied would not have covered these costs even if Sannes had tendered Aguilera's defense to Lloyd's because Aguilera's alleged damages were significantly short of the Greenberg Policy's retention.  In other words, Sannes argued Aguilera could not prove that, but for Sannes' alleged failure to tender the claim to Lloyd's, Aguilera would not have sustained monetary damages.

**¶16**        With regard to Greenberg, Sannes argued Greenberg had no legal obligation to assume any costs for Aguilera's defense as a former shareholder, because Aguilera had produced no evidence showing Greenberg would have done so.  Sannes maintained that Aguilera's allegation, claiming Greenberg would have voluntarily indemnified him, was especially suspect considering the allegations against Aguilera were for his own fraudulent conduct.[9]  Moreover, Sannes argued that Greenberg would not have defended or indemnified Aguilera because Aguilera had

---

[8]        Aguilera's complaint against Sannes alleged professional negligence, breach of fiduciary duty, and breach of contract.  On appeal, however, Aguilera does not challenge the dismissal of the breach of contract claim.

[9]        Indeed, the Greenberg Policy specifically excludes coverage for any alleged fraudulent acts.  More importantly, the Chonczynskis never alleged that Aguilera's fraudulent acts were performed during the course and scope of his employment with Greenberg, or for the benefit of Greenberg.

secretly entered a separate profit-sharing agreement with a current client, PH II—an agreement that Aguilera admitted he never disclosed to Greenberg—which Sannes asserted violated Arizona Rule of Professional Conduct 1.8(a), a rule prohibiting an attorney from entering into a business transaction with a client absent certain conditions. *See* Ariz. R. Sup. Ct. 42, ER 1.8(a).[10]

**¶17** In response, Aguilera did not argue the language in the Greenberg Policy was vague or ambiguous. Instead, he produced his own declaration that he claimed "contradict[ed]" Sannes' interpretation of the policy's retention language, some exhibits, and an expert witness affidavit from attorney Robert S. Porter. Porter opined that, had Sannes tendered the defense of the claims against Aguilera to Greenberg and Lloyd's, one or both would have paid for Aguilera's defense. Porter based his opinion on "the certificates of insurance with Lloyd's of London for Greenberg Traurig for the years 2006, 2007 and 2008, a review of lawsuits brought in Maricopa County Superior Court against Greenberg Traurig and its lawyers in the past and [his] general knowledge and experience."

**¶18** In reply, Sannes argued in part that Porter's affidavit indicated he did not base his opinion on an actual review of the Greenberg Policy or Greenberg's internal employment policies; instead, Porter had simply indicated he reviewed the certificates of insurance, which lacked the retention language contained in the Greenberg Policy.[11]

## C. *The Superior Court's Ruling*

**¶19** In October 2018, the superior court heard oral argument on Sannes' motion for summary judgment. After taking the matter under advisement, the court granted the motion. The court found no issue of material fact as to whether Sannes' failure to tender the defense to Lloyd's caused damages to Aguilera because the Greenberg Policy had a $7.5

---

[10] There is also a specific provision in the Greenberg Policy excluding coverage for liability arising out of a lawyer's business dealings and/or status as an officer or director of another entity. As previously noted, the operative complaints alleged that, at all relevant times, Aguilera was an officer and director of Inmobiliaria, and was acting on behalf of PH II and/or RY.

[11] The certificates of insurance identified the amount of the deductible, but not the specific terms delineating how the deductible/retention applied to a lawsuit.

million retention, while the amount in controversy was only $328,000.[12] The court also found no genuine issue of material fact whether Sannes' failure to tender the defense to Greenberg damaged Aguilera because the record was devoid of any evidence that Greenberg would have accepted the tender and paid for Aguilera's claim and/or defense.

¶20 The court also noted the only purported evidence Aguilera produced in support of his claim that Greenberg would have indemnified him was the Porter affidavit,[13] which "do[es] not meet the standard of 'competent evidence' as a matter of law because [Porter's] opinions are not admissible as expert testimony pursuant to Rule 702," Ariz. R. Evid.[14] The court explained Porter's declaration lacked any indication that (1) Porter's opinions were based on sufficient facts or data, (2) Porter's opinions were

---

[12] Although not raised at any time by the parties, we note that the proper comparison to the $7.5 million retention—at least as it relates to insurance coverage—is not necessarily Aguilera's claimed $328,000 in defense costs/damages, but the potential liability exposure faced by Greenberg (and Aguilera as a covered employee/insured of Greenberg) in the Chonczynskis' lawsuit. However, as previously noted, the Chonczynskis' complaint made no allegations against Greenberg and did not allege that Aguilera was at any point acting as an authorized agent of, or in the course and scope of his usual and customary employment with, Greenberg. In fact, the Chonczynskis' complaints did not mention Greenberg at all. When a policy refers to "the insured" (instead of "any insured"), as Greenberg's policy does, case law generally interprets this as applying only to the specific insured who is seeking coverage, not other co-insureds. *See Brown v. U.S. Fid. & Guar. Co.*, 194 Ariz. 85, 95, ¶ 62 (App. 1998). Here, even considering the Chonczynskis' punitive damage claim of $1.5 million, the court correctly noted the exposure faced by Aguilera was, realistically, significantly less than $7.5 million.

[13] The court also cited Aguilera's "Controverting and Additional Statement of Facts," which incorporated by reference Aguilera's declaration.

[14] A qualified expert witness may testify in the form of an opinion or otherwise pursuant to Arizona Rule of Evidence 702 "if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case."

the product of reliable principles or methods, and (3) Porter reliably applied the principles and methods to the facts of the case. *See* Ariz. R. Evid. 702(b)-(d).

**¶21**        The superior court summarily denied Aguilera's motion for reconsideration, and later entered a judgment in favor of Sannes pursuant to Rule 54(c), Ariz. R. Civ. P. We have jurisdiction over Aguilera's timely appeal. *See* Ariz. Rev. Stat. ("A.R.S.") § 12-2101(A)(1).

## ANALYSIS

**¶22**        Aguilera argues the superior court erred in granting summary judgment in favor of Sannes. We disagree.

### I.        *Standard of Review and Applicable Law*

**¶23**        The superior court should grant summary judgment when "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. ("Rule") 56(a). If, however, there are material facts upon which reasonable people could reach different conclusions, summary judgment is not appropriate. *Gulf Ins. Co. v. Grisham*, 126 Ariz. 123, 124 (1980). In deciding a motion for summary judgment, courts make no distinction between direct and circumstantial evidence. *Mobilisa, Inc. v. Doe*, 217 Ariz. 103, 113, ¶ 34 (App. 2007). When a party makes a properly supported motion for summary judgment, the opposing party may not rely on mere allegations, conclusory statements, or denials of its own pleading. Ariz. R. Civ. P. 56(e); *State ex rel. Corbin v. Challenge, Inc.*, 151 Ariz. 20, 26 (App. 1986).

**¶24**        We review *de novo* the grant of summary judgment, viewing the facts and all reasonable inferences therefrom in the light most favorable to the party against whom judgment was entered. *Felipe v. Theme Tech Corp.*, 235 Ariz. 520, 528, ¶ 31 (App. 2014) (citation omitted). "Summary judgment should be granted 'if the facts produced in support of the claim or defense have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the proponent of the claim or defense.'" *Aranki v. RKP Invs., Inc.*, 194 Ariz. 206, 208, ¶ 6 (App. 1999) (quoting *Orme Sch. v. Reeves*, 166 Ariz. 301, 309 (1990)). We will affirm if the superior court's ruling is correct for any reason. *Melendez v. Hallmark Ins. Co.*, 232 Ariz. 327, 330, ¶ 9 (App. 2013) (citation omitted).

**¶25**        Interpretation of an insurance contract is a question of law we review *de novo*. *Liristis v. Am. Family Mut. Ins. Co.*, 204 Ariz. 140, 143, ¶ 13

(App. 2002). An insured generally bears the burden of establishing coverage under an insuring clause. *Keggi v. Northbrook Prop. & Cas. Ins. Co.*, 199 Ariz. 43, 46, ¶ 13 (App. 2000). "In interpreting an insurance contract, we look first to the policy language." *Lennar Corp. v. Auto-Owners Ins. Co.*, 214 Ariz. 255, 263, ¶ 23 (App. 2007) (citation omitted). "Absent a specific definition, terms in an insurance policy are construed 'according to their plain and ordinary meaning,' and the policy's 'language should be examined from the viewpoint of one not trained in the law or in the insurance business.'" *Equity Income Partners, LP v. Chicago Title Ins. Co.*, 241 Ariz. 334, 338, ¶ 13 (2017) (citation omitted). In determining the ordinary meaning of words, we may rely on dictionaries. *See id.* at ¶ 14.

## II.  The Merits

### A. Application of the Summary Judgment Standard

¶26  Aguilera argues the superior court misapplied the standard for summary judgment by placing the burden on him to prove his prima facie case and provide evidence establishing causation.

¶27  In moving for summary judgment, however, a defendant need not submit evidence negating a plaintiff's case; instead, he can "merely point out by specific reference to the relevant discovery that no evidence exist[s] to support an essential element of the claim." *Orme Sch.*, 166 Ariz. at 310 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 328 (1986)). In other words, Sannes could merely point to the absence of evidence supporting the essential element of causation underlying Aguilera's claim, *see id.*, which is effectively what Sannes did in his motion.

¶28  Further, we find unavailing Aguilera's reliance on *Hydroculture, Inc. v. Coopers & Lybrand*, 174 Ariz. 277 (App. 1992), in which this court stated that "[a] plaintiff responding to a motion for summary judgment need not present its prima facie case unless the motion adequately challenges its ability to do so." *Id.* at 283. Sannes' motion adequately challenged Aguilera's ability to present his prima facie case by specifically referencing the language of the Greenberg Policy and the applicable certificate of liability insurance, which collectively established Aguilera had to sustain $7.5 million in damages, including reasonable costs, charges, and expenses, before Lloyd's indemnification coverage applied and by noting Aguilera failed to produce any evidence negating the applicability of the retention clause. Sannes further challenged the causation element by noting Aguilera had failed to produce evidence that

a demand/tender to Greenberg—timely or otherwise—would have resulted in Greenberg voluntarily paying for Aguilera's defense.

*B. Failure to Tender to Lloyd's Under the Greenberg Policy*

**¶29** As to Aguilera's allegation that Sannes failed to tender Aguilera's defense to Lloyd's, the superior court did not err in concluding Aguilera failed to sustain his burden of proving that if the tender had been made, Lloyd's would have defended and indemnified Aguilera against the Chonczynskis' claim for aiding and abetting fraud. First, as previously noted, there are specific provisions in the Greenberg Policy excluding any coverage for Aguilera's alleged conduct. Second, even assuming a question exists as to coverage for fraudulent conduct, under the policy, Greenberg and/or Aguilera had a $7.5 million retention/deductible for each covered claim. The Greenberg Policy further stated as part of its conditions regarding any alleged obligation on the part of Lloyd's:

> 2. RETENTION[15]
>
> In respect of any CLAIMS covered hereunder, this Policy is only to pay the excess of the RETENTION stated in Item (a) of THE SCHEDULE in respect of each and every such CLAIM, including reasonable costs, charges and expenses.[16]

Although the actual "RETENTION stated in Item (a) of THE SCHEDULE" was redacted in the copy of the policy Greenberg produced, the certificate of insurance that applied when the Chonczynskis' lawsuit was filed stated the Greenberg Policy contained a $7.5 million "deductible" applicable to each claim, indicating the retention was $7.5 million. Accordingly, a plain reading of the Greenberg Policy's terms is that Greenberg and/or Aguilera would have been responsible for all defense costs and indemnity payments

---

[15] "Retention" may be defined as "the portion of the insurance on a particular risk not reinsured or ceded by the originating insurer." *Retention Definition*, The Merriam-Webster.com Dictionary, Merriam-Webster Inc., https://www.merriam-webster.com/dictionary/retention (last visited Dec. 11, 2019); *cf.* Black's Law Dictionary 1365 (7th ed. 1999) (defining "self-insured retention" as "[t]he amount of an otherwise-covered loss that is not covered by an insurance policy and that usu[ally] must be paid before the insurer will pay benefits").

[16] The policy also provided that "'CLAIMS EXPENSES' WILL BE APPLIED AGAINST THE RETENTION."

up to the amount of the retention before Lloyd's obligation would arise.[17] Thus, the superior court did not err in concluding that "the undisputed evidence demonstrates that, until the cost of defense reached $7.5 million, Lloyd's would not financially contribute to the defense or settlement."

### C.  Aguilera's Vagueness and Ambiguity Argument & Declaration

**¶30**        Aguilera argues the Greenberg Policy is vague and ambiguous, and the superior court erred both in not requiring that Sannes produce extrinsic evidence as to the policy's meaning[18] and in concluding the retention language in the policy constituted the equivalent of a deductible that would not trigger a duty to defend or indemnify.  Putting aside the fact that the subject policy clearly excluded coverage for Aguilera's alleged conduct, our review of the record indicates Aguilera waived this vagueness argument by failing to raise it in his response to Sannes' motion for summary judgment or at oral argument before the superior court.  *See State ex rel. Brnovich v. Miller*, 245 Ariz. 323, 324, ¶ 5 (App. 2018) ("Matters not presented to the trial court cannot for the first time be raised on appeal." (quoting *Brown Wholesale Elec. Co. v. Safeco Ins. Co. of Am.*, 135 Ariz. 154, 158 (App. 1982))).  Moreover, even assuming *arguendo* the argument was not waived, we disagree the retention/deductible language qualifies as vague or ambiguous.  The plain and ordinary meaning of the language in the Greenberg Policy establishes that Aguilera needed to incur $7.5 million in defense costs/damages before Lloyd's indemnity obligation would be triggered.

**¶31**        Aguilera argues his personal declaration and accompanying exhibits—showing that Lloyd's had agreed to represent him subject to a reservation of rights in a separate but related lawsuit—created an issue of material fact as to whether Lloyd's would have defended and indemnified him in the Chonczynski case.  But that argument in part incorrectly presupposes he made and preserved the vagueness-and-ambiguity argument - he did not.  The argument is also wrong because Aguilera's declaration sheds no light on how the Greenberg Policy operated and does

---

[17]        Greenberg's certificates of liability insurance were authenticated by Mary E. Bruno, Greenberg's "Assistant General Counsel," and Aguilera does not challenge their authenticity.

[18]        "Once a contract is determined to be ambiguous, extrinsic evidence may be resorted to for the purpose of ascertaining its real meaning." *Associated Students of Univ. of Ariz. v. Ariz. Bd. of Regents*, 120 Ariz. 100, 104 (App. 1978) (citation omitted).

not create an issue of material fact about whether the retention applied to him.[19]

**¶32** Aguilera claims his experience with the Aguilera Policy reveals "a duty to defend existed" under the Greenberg Policy. But while the Aguilera Policy expressly contained a "duty to defend" provision,[20] the Greenberg Policy, which was a policy "to indemnify," did not. Further, the reservation of rights letter in the related litigation shows that despite being represented under a reservation of rights, Aguilera was never relieved of the deductible obligation.[21] Thus, his declaration and accompanying exhibits do not show he would have been relieved from the $7.5 million retention contained in the Greenberg Policy even if he had been defended under a reservation of rights in the Chonczynskis' lawsuit.

**¶33** Finally, Aguilera's declaration also sheds no light on whether Greenberg would have voluntarily paid for his legal defense. That Greenberg was a named defendant in the 2009 lawsuit filed by Yahnke and RY does not raise an issue of material fact about whether Greenberg would have voluntarily paid for Aguilera's legal fees in the Chonczynskis' lawsuit. First, Aguilera provided no documentation evidencing who paid for the

---

[19] Aguilera provided extrinsic evidence attempting to show how Lloyd's treated retentions in determining its obligations. In responding to Sannes' summary judgment motion, Aguilera attached a reservation of rights letter Lloyd's issued in response to Aguilera tendering his defense under his subsequently-obtained Aguilera Lindsay policy ("the Aguilera Policy") for a separate lawsuit filed against Aguilera (and Greenberg) by Yahnke and RY in 2009. The Aguilera Policy was an entirely different claims-made policy than the Greenberg Policy, although Lloyd's was the insurance carrier under both policies.

[20] The Aguilera Policy stated, "The Underwriters shall have the right and duty to defend, subject to the Limit of Liability, any Claim against the Insured seeking Damages which are payable under the terms of this insurance, even if any of the allegations of the Claim are groundless, false or fraudulent."

[21] In the reservation of rights letter, Lloyd's confirmed the "Deductible of $10,000" in the Aguilera Policy had to first be paid by Aguilera before Lloyd's defense and indemnity obligations were triggered.

litigation costs in the 2009 lawsuit.[22]  And second, unlike the 2009 lawsuit, Greenberg was not a named defendant in the Chonczynskis' lawsuit, where Aguilera was sued in his individual capacity and for his own alleged fraudulent conduct.  Thus, Greenberg's interests in each lawsuit were substantially different.  As a result, Aguilera's declaration did not raise an issue of material fact on the causation issue in this case because the circumstances, controlling policies, and interests of Greenberg in the 2009 lawsuit were different from those in the Chonczynskis' lawsuit.

### D.  *The Porter Affidavit*

**¶34**        Aguilera argues the superior court erred in refusing to give weight to the Porter affidavit,[23] and in concluding the affidavit failed to raise an issue of material fact as required by Rule 56(e), Ariz. R. Civ. P., and failed to "meet the standard of 'competent evidence' as a matter of law" as required by Rule 702, Ariz. R. Evid.  In support of his argument, Aguilera notes that Sannes did not depose Porter or file an expert declaration disputing Porter's affidavit, Porter never testified in court, and no *Daubert*[24] hearing was held.

**¶35**        "When the party moving for summary judgment makes a prima facie showing that no genuine issue of material fact exists, the burden shifts to the opposing party to produce sufficient competent evidence to show that an issue exists."  *Kelly v. NationsBanc Mortg. Corp.*, 199 Ariz. 284, 287, ¶ 14 (App. 2000) (citation omitted); *accord Ulibarri v. Gerstenberger*, 178 Ariz. 151, 156 (App. 1993) ("Once the defendant has established a *prima facie* case entitling him to summary judgment, the plaintiff has the burden of showing available, competent evidence that would justify a trial." (citation omitted)).

---

[22]     The claims-made Greenberg Policy applicable to the Chonczynskis' suit expired in 2008, and Aguilera did not produce the Lloyd's policy that applied to Greenberg in the 2009 lawsuit.

[23]     The superior court did not ignore Porter's affidavit, as Aguilera suggests; instead, the court clearly considered it.

[24]     *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592-93 (1993) (concluding that the trial judge should preliminarily assess proffered expert testimony to determine "whether the reasoning or methodology underlying the testimony is scientifically valid and . . . whether that reasoning or methodology properly can be applied to the facts in issue").

¶36 Expert affidavits offered in opposition to summary judgment must "set forth specific facts showing a genuine issue for trial." Ariz. R. Civ. P. 56(e). "[A]ffidavits that only set forth ultimate facts or conclusions of law can neither support nor defeat a motion for summary judgment." *Florez v. Sargeant*, 185 Ariz. 521, 526 (1996) (citations omitted). And they must "set forth 'specific facts' to support an opinion." *Id.* (citations omitted). Thus, merely submitting an expert affidavit, absent more, is generally insufficient to defeat summary judgment. *See id.* Further, an expert affidavit relying on sheer speculation is insufficient to defeat summary judgment. *Modular Mining Sys., Inc. v. Jigsaw Techs., Inc.*, 221 Ariz. 515, 520, ¶ 19 (App. 2009); *see also Ulibarri*, 178 Ariz. at 161 ("If a party fails to lay adequate foundation for an expert's affidavit in response to a motion for summary judgment, that testimony is not considered." (citations omitted)).

¶37 Here, Sannes' summary judgment motion demonstrated that, even assuming coverage, under the terms of the Greenberg Policy's retention clause, Aguilera had to incur $7.5 million in costs or damages before Lloyd's obligations under the policy were triggered. Aguilera's total exposure, and ultimately his claimed cost of defense, was significantly less. Sannes also noted that Aguilera's assertion that Greenberg—which was not a party to, or in any way implicated in, the Chonczynskis' lawsuit—would have voluntarily paid the retention on Aguilera's behalf was, at best, speculative and completely unsupported by the record. As such, Aguilera could not establish that, but for Sannes' failure to tender the claim, Aguilera would not have incurred defense costs either covered by the firm's policy or for which Greenberg would be vicariously liable and thus inclined to provide Aguilera a defense. In response, Aguilera provided only his personal declaration, which raised no question of material fact, and the Porter affidavit.[25]

---

[25] Sannes argues Porter's affidavit makes it clear he did not review the Greenberg Policy on which Aguilera relied for coverage, and instead only reviewed the certificates of insurance. In his opening brief, Aguilera argues for the first time that, when Porter stated he had reviewed the certificates of insurance, he "obviously was referring to the [Greenberg] Policy itself." Sannes responds that "[n]othing in the record supports this novel and waived theory, which is aimed at creating an issue of material fact where none exists." In his reply brief, Aguilera's counsel represents for the first time that he has personal knowledge Porter examined the Greenberg Policy. Although not necessary to our decision, we conclude Aguilera has

**¶38** We agree with the superior court that Porter's affidavit failed to raise an issue of material fact as required by Rule 56(e), Ariz. R. Civ. P. As the superior court correctly noted, "[T]he record is devoid of any evidence from anyone at [Greenberg] indicating that [Greenberg] would have paid for the claim and/or defense of [Aguilera]." We again note that the Chonczynskis alleged "Aguilera actively and intentionally aided, abetted and co-conspired with the other Defendants in breaching applicable laws and statutes and breaching the sales contract with the intent to deprive the [Chonczynskis] of their money and property and used Inmobiliaria [] as a vehicle to do same." The allegations against Aguilera in the Chonczynskis' Second Amended Complaint set forth a cause of action for aiding and abetting fraud, an intentional tort, and did not allege Aguilera fell below the standard of care as a lawyer, or that in committing any alleged tort that he was acting in the course and scope of his employment with Greenberg. The Chonczynskis' complaints, even generously construed, do not allege professional negligence on the part of Aguilera, which is the type of risk Lloyd's agreed to cover, or for which Greenberg could be held vicariously liable. Thus, neither Lloyd's nor Greenberg would have any practical incentive or, more importantly, any legal responsibility to provide a defense or indemnify Aguilera for his alleged criminal or fraudulent acts. Moreover, immediately after being served with the Chonczynskis' lawsuit, Aguilera severed his relationship with Greenberg, and left that employment without notifying anyone at Greenberg of the existence of the lawsuit or its allegations.

**¶39** In short, Aguilera did not provide specific evidence nullifying the retention clause, nor did he offer affidavits from any Greenberg employees suggesting Greenberg would have paid for his defense had Sannes tendered the claim to Greenberg directly. Aguilera also did not present any evidence establishing Greenberg had an internal policy of doing so.

**¶40** Similarly, Porter's affidavit on its face lacked a factual basis for raising a question of material fact. As the superior court recognized, the affidavit failed to identify anyone from Greenberg whom Porter had consulted before reaching his conclusions; failed to show Porter had any knowledge of how Greenberg handled situations when a tort claim arising out of one of its lawyer's criminal, fraudulent, or intentionally tortious conduct was tendered for defense; and lacked reference to any review of Aguilera's employment arrangement with Greenberg, or of any internal

waived this argument and proffer of "evidence." *See Dillig v. Fisher*, 142 Ariz. 47, 51 (App. 1984).

agreements between Aguilera and Greenberg that may have delineated rights and financial responsibilities vis-à-vis Greenberg and Aguilera. And although Porter's affidavit stated he had reviewed past lawsuits brought in Maricopa County Superior Court against Greenberg and its attorneys, the affidavit revealed nothing about the number, allegations, or other pertinent circumstances of those lawsuits, or what documents Porter might have reviewed. Accordingly, Porter's affidavit failed to set forth specific facts to support his opinion and was insufficient as a matter of law to defeat summary judgment. *See Florez*, 185 Ariz. at 526; *Modular Mining Sys.*, 221 Ariz. at 520, ¶ 19; *Ulibarri*, 178 Ariz. at 161. The superior court did not err in concluding the Porter affidavit failed to raise an issue of material fact as to whether any tender of defense or indemnity would have been accepted by Lloyd's or Greenberg.[26]

### E. Aguilera's "Entitlement" to Indemnification from Greenberg

**¶41**  Aguilera next argues he was entitled to indemnity from Greenberg due to his employment contract and principles of agency law.

**¶42**  "When there is an express indemnity contract, the extent of the duty to indemnify must be determined from the contract[.]" *INA Ins. Co. of N. Am. v. Valley Forge Ins. Co.*, 150 Ariz. 248, 252 (App. 1986) (citations omitted). Here, Aguilera never produced a contract establishing, or even suggesting, Greenberg had an obligation to defend him against the Chonczynskis' accusations of wrongful conduct.[27] Consequently, his claim alleging that Greenberg would have indemnified him for his legal defense is necessarily based on principles of implied contractual indemnity. *See id.* "A right of implied contractual indemnity may arise when an agent,

---

[26]  Because the superior court correctly found Porter's affidavit failed to create an issue of material fact due to his failure to set forth specific facts in support of his opinion, we need not, and do not, review the court's finding that Porter's opinions were otherwise improper under Arizona Rule of Evidence 702. *See Hydroculture*, 174 Ariz. at 281 (stating that this court "will uphold a grant of summary judgment on any valid legal basis").

[27]  Under traditional tort and agency law, where the actions of the employee have created a legal liability for the employer under a *respondeat superior* theory, any duty of indemnification would instead be on the servant whose conduct during the course and scope of employment gave rise to the vicarious liability on the part of the employer. *See Spettigue v. Mahoney*, 8 Ariz. App. 281, 284 (1968) (stating that "a negligent servant ordinarily has the duty of indemnifying his employer").

through no wrongdoing of his own, incurs liability for an act performed on behalf of a principal[.]" *Id.* (citation omitted). "An indemnitee must be proven to be free of negligence in order to receive indemnity either under a general indemnity agreement or under implied indemnity." *Id.* at 255 (citation omitted). Aguilera bears the burden of proving he is entitled to indemnity under implied-indemnity principles. *Id.* at 255. But, notably absent from Aguilera's self-serving declaration is any claim that his actions vis-à-vis the Chonczynskis, PH II, et al. were performed at the direction of or on behalf of Greenberg.

¶43　　　In moving for summary judgment, Sannes maintained Aguilera's claim was speculative because Greenberg had no legal obligation to defend or indemnify Aguilera for his own alleged wrongful conduct. Aguilera responds in his opening brief that "[a]llegations in a complaint do not amount to evidence, liability, or defeat indemnification."

¶44　　　We agree the existence of the right to indemnity cannot be controlled simply by unproven allegations made by a third party. *Id.* at 253. At the same time, however, the allegations of aiding and abetting fraud in the Chonczynskis' complaint neither foreclosed, nor entitled, Aguilera to indemnification from Greenberg because "whether allegations of a complaint control the right to indemnity is really an issue of when the right to indemnity accrues." *Id.* A contractual right of indemnity accrues "upon the happening of one or both of two events." *Id.* Indemnification against liability accrues after "liability for a cause of action is established." *Id.* (citations omitted). Indemnification against loss or damages, on the other hand, accrues after "the indemnitee has actually paid the obligation for which he was found liable." *Id.* (citations omitted). Therefore, "it is an indemnitee's actual wrongdoing or lack of it, rather than allegations of wrongdoing, which determine the indemnitee's rights." *Id.* (quoting *Ins. Co. of N. Am. v. King*, 340 So. 2d 1175, 1176 (Fla. Dist. Ct. App. 1976)).

¶45　　　During the time Sannes represented Aguilera, however, there were no factual determinations as to whether Aguilera engaged in the alleged fraudulent conduct; accordingly, Greenberg could not have been obligated to indemnify him. *See id.* Thus, any potential right to indemnification had not yet accrued.

¶46　　　Moreover, if Aguilera believed he was entitled to indemnification from Greenberg, he could have pursued that claim after he

settled with the Chonczynskis.[28] *See Hauskins v. McGillicuddy*, 175 Ariz. 42, 51 (App. 1992) (concluding that a cause of action for indemnity accrued when the parties' settlement agreement was entered into judgment). But because there had been no factual determination about Aguilera's wrongdoing, the superior court did not err by failing to conclude Aguilera was entitled to indemnification from Greenberg when a lawsuit was filed against him.

¶47          Because on the record presented Greenberg was not obligated to indemnify Aguilera for his litigation expenses, Aguilera needed to produce some evidence suggesting Greenberg would have voluntarily done so. Aguilera, however, produced no documentation suggesting Greenberg had an internal policy of voluntarily paying the legal fees of attorneys it employed who were sued for fraudulent conduct, or otherwise would have paid for his legal fees had Sannes tendered the defense to Greenberg. Aguilera also did not depose Greenberg's general counsel or any managing partner to inquire about how Greenberg handled similar situations. Because Aguilera produced no evidence creating an issue of material fact, the superior court did not err in granting summary judgment. *See* Ariz. R. Civ. P. 56.

## CONCLUSION

¶48          We affirm the superior court's summary judgment in favor of Sannes. We award Sannes his taxable costs on appeal, contingent upon compliance with Rule 21, ARCAP.



AMY M. WOOD • Clerk of the Court
FILED:  AA

---

28          Aguilera did not seek indemnification from Greenberg after settling with the Chonczynskis, claiming it would be "an exercise in futility."